RUSSELL, Appellant, *v.* SUNBURST REFINING CO., Respondent.

(No. 6,261.)

(Submitted October 3, 1928. Decided December 22, 1928.)

[272 Pac. 998.]

*Messrs. Wheeler & Baldwin,* for Appellant, submitted an original and a reply brief; *Mr. James H. Baldwin* argued the cause orally.

*Mr. Homer G. Murphy* and *Messrs. Maury & Brown,* for Respondent, submitted a brief; *Mr. H. Lowndes Maury* argued the cause orally.

MR. JUSTICE STARK delivered the opinion of the court.

After the original opinion in this case was handed down a petition for rehearing was granted. Our conclusion in the first place was based upon a single contention raised by counsel for defendant, and on re-argument we were led to doubt the correctness of the basis of the decision. For this reason the original opinion is ordered withdrawn and this one substituted for it.

The plaintiff in this action, doing business under the name of Auto Gas & Oil Company, seeks to recover from defendant, a Montana corporation, moneys which he alleges he paid to it as a result of deceits practiced upon him. Eighty-eight causes of action are set forth in the complaint, the first twenty-eight of which are based upon frauds and deceits alleged to have been practiced upon plaintiff for the purpose of inducing him to agree to buy from the defendant certain carloads of gasoline and to pay it therefor two cents per gallon in excess of the price agreed upon. The first cause of action involves ten carloads of gasoline, the second fifty carloads, and the remainder of the first twenty-eight causes, one car each. Causes of action numbered twenty-nine to eighty-eight, inclusive, are based upon frauds and deceits alleged to have been practiced on plaintiff by defendant

after it had sold and delivered to him specified cars of gasoline, as a result of which plaintiff paid to the defendant two cents per gallon in excess of the price agreed upon for each gallon of gasoline contained in said cars. Each of these causes of action involves one carload of gasoline.

In its answer the defendant admitted that plaintiff was doing business under the name of Auto Gas & Oil Company; that it was a corporation, and denied generally all the other allegations of each cause of action.

The case was tried before the court with a jury. At the close of all the testimony the defendant moved the court to direct the jury to bring in a verdict in its favor upon each cause of action set forth in the complaint. This motion was sustained as to all the causes of action except the first, second, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth. The jury returned a verdict in favor of defendant upon all of the causes of action submitted to it and judgment was duly entered thereon. The plaintiff moved the court for a new trial, which motion was denied and he has appealed from the judgment and seeks to review the proceedings had at the trial under a bill of exceptions prepared and settled after the decision on motion for new trial had been rendered.

To sustain the allegations of his complaint the plaintiff testified that his transactions with the defendant began about the latter part of October, 1923, and continued until about the first of October, 1924; that on different occasions a representative of the defendant called at his place of business in Butte and solicited from him orders for carload lots of gasoline; that on these occasions, after the price of gasoline had been agreed upon, the defendant's representative made various statements relative to the additional two cents per gallon charge, such as these: that he "would have to charge me for the tax; that the refinery had to pay it to the state." "He said it was for the state tax and that he would * * * have to collect it as the refinery had to pay it to the state."

"He said he would have to charge two cents state tax, that they had to pay it to the state, that we could not send it to the state ourselves and that they would have to send it and they would have to charge it to us."

Referring to one of the many conversations with the representatives of the defendant relative to this two cents additional charge, he was asked and answered: "Q. Did Mr. Wyatt [defendant's agent] make any statement with reference to what the tax was charged for or why it was charged? A. A state tax that had to be paid to the state of Montana." He further testified that on the bills rendered to him for the various carload lots of gasoline sold to him by the defendant, the total charge was segregated into two items,—one representing the charge for gasoline and the other the state tax. One of those bills, Plaintiff's Exhibit No. 3, covering the carload of gasoline mentioned in the fourth cause of action, except as to date, amount of gasoline and price charged, is substantially the same as Exhibits 3 to 13, inclusive, covering causes of action 4 to 14, inclusive, and the items contained therein as charges against plaintiff are as follows:

"One T C Sunburst Gasoline

| "8146 gals. | 10¢–$814.60 |
| "State tax | 2¢–$162.92 |

"12¢ $977.52"

The plaintiff testified that he believed in and relied upon the statements made by the defendant's agents and would not have made payments of the two cents per gallon if it had not been for the making of such statements and his belief that the two cents were actually being paid to the state as a tax on each gallon of gasoline mentioned therein.

The first cause of action covers ten carloads of gasoline and the testimony concerning the sale and purchase thereof is substantially the same as the testimony relative to cause of action numbered 4, above referred to, and plaintiff's exhibits covering the same, numbered 61 to 70, inclusive,

are substantially the same as Exhibit No. 3, above mentioned, save as to date and amount of gasoline covered.

The testimony relative to the second cause of action differs from that above referred to in that the carloads of gasoline involved therein were purchased by and delivered to plaintiff under a written order therefor which is as follows:

"Sunburst Refining Co., P. O. Box 1616, Great Falls, Montana.

"No. 3. Date 4/17-1924. Sold to Auto Gas and Oil Co.

"Town and State: Butte, Montana. * * *

"50 Carloads 58/60 Sunburst Economy Gasoline at 06 cents spread under tank wagon price Butte. Tax paid— freight to be deducted from invoice.

"Purchaser's signature: JOSEPH RUSSELL, Mgr.

"Salesman: M. C. HENDERSON."

Testifying concerning the carloads of gasoline covered by this written order and which were mentioned in his Exhibits 15 to 53, inclusive, which exhibits were substantially the same as Exhibit No. 3, above mentioned, the plaintiff explained that by the tank wagon price was meant the price of gasoline as delivered to garages; that by the "spread" was meant the difference between the agreed price of the gasoline and the tank wagon price, and that it was understood that the total cost to him for the gasoline and the tax would be' six cents less than the tank wagon price; that on these fifty cars he paid the agreed price of the gasoline and in addition thereto the two cents on each gallon. On his cross-examination it was developed from the witness that the total amount per gallon which he paid for each of the carloads involved in the fifty-car transaction, concerning which testimony was given, was six cents under the tank wagon price at Butte; that he had never been called upon to pay more and had never paid more, and that the tank wagon price and the retail price of gasoline in Butte have been the same for several years, or shortly after his start in business there in 1918. The various exhibits introduced in evidence and which have been referred to above,

cover the carloads of gasoline involved in causes of action 4 to 14, inclusive; the ten cars described in the first cause of action, forty of the cars described in the second cause of action, and the carloads of gasoline involved in causes of action numbered from 29 to 88, inclusive. No testimony was admitted tending to establish the allegations of the other causes of action embraced in the complaint.

After it had been admitted by counsel for the defendant that it had not paid any gasoline tax to the state of Montana during the periods of time covered by the proof, the plaintiff rested his case.

Witnesses were called and gave testimony on behalf of the defendant, but we do not deem it necessary to refer to it at this time.

In their brief filed in this court, counsel for plaintiff have made numerous specifications of error, all of which are predicated upon matters occurring at the trial and can only be shown by a bill of exceptions properly allowed and settled. As heretofore indicated, such a bill of exceptions does appear in the record and at the outset we are met with a motion to strike the same therefrom upon several grounds.

The first ground of this motion is that the bill was not allowed, settled and signed by a proper judge. In that connection it should be noted that the judgment was entered on May 7, 1927, and notice of entry of the same served upon counsel for the plaintiff on the tenth day of May, 1927. On May 17 counsel for plaintiff gave notice of motion for a new trial on eight statutory grounds, the first five of which it was stated would be made on affidavits thereafter to be filed, and the remaining grounds were based on the minutes of the court. At the same time notice was served that the motion would be heard on May 27. On May 25 a stipulation was entered into between counsel for plaintiff and defendant, granting the plaintiff until June 6 to serve and file affidavits in support of the motion for a new trial and that the hearing thereon should be continued until that time. Pursuant to this stipula-

tion an order of the court to that effect was signed and filed. On May 26 the plaintiff filed an affidavit disqualifying Judge Bourquin from further participation in the case, and by an order signed by Judge Bourquin the same was transferred to another department of the court presided over by Judge Lynch. On June 3 Judge Lynch, deeming himself disqualified, called in Judge A. J. Horsky of the First Judicial District to hear and determine the plaintiff's motion for a new trial and set the hearing on the same for June 6, and on June 6 made an order continuing the hearing to June 9. On the last-mentioned day Judge Horsky appeared and assumed jurisdiction in the case and on his own motion continued the hearing to June 10. On June 10 the motion was brought on for hearing and the defendant filed objections to the hearing of the motion on the ground that the court had lost jurisdiction of the motion. The objections were overruled and the motion was argued and taken under advisement until the 25th of June, when an order was made denying the same. On June 27 the plaintiff's proposed bill of exceptions was served and filed. On the same day the defendant filed objections to the settlement of the same, which objections were overruled, and on June 30 the bill was settled by Judge Horsky.

A motion for a new trial must be submitted to, heard and determined by the court and not by the judge thereof. When Judge Horsky appeared and assumed jurisdiction of the cause he became vested with all the power and authority over the same which a judge of that court theretofore possessed. In the settlement of the bill of exceptions the plaintiff had elected, as was his right, not to have the same prepared, allowed or settled until after the decision on his motion for a new trial. (Sec. 9390, Rev. Codes 1921.)

The motion for a new trial as presented to Judge Horsky was based alone on the minutes of the court and in passing upon the same it was his duty to consider the pleadings, records, minute entries and the evidence offered and the

proceedings had at the trial, and from the entire case thus presented determine the motion. (*State ex rel. Cohn* v. *District Court*, 38 Mont. 119, 99 Pac. 139; *Moore* v. *Butte Electric Ry. Co.*, 47 Mont. 214, 131 Pac. 635; *Rickards* v. *Aultman-Taylor M. Co.*, 64 Mont. 394, 210 Pac. 82.)

Sections 9398 and 9400 expressly state that the official stenographic report of the trial may be referred to as a part of the minutes of the court. In passing upon the motion for a new trial it is presumed that all the above matters were considered by the court. (*Sanden* v. *Northern Pac. Ry. Co.*, 39 Mont. 209, 102 Pac. 145.) There is no appeal from an order overruling a motion for a new trial (sec. 9745), and questions heretofore raised on such an appeal are now raised on an appeal from the judgment. To obtain a review of an order overruling such a motion, the party appealing must furnish the court, amongst other things, with copies of all papers and evidence used on the hearing in the court below. (Sec. 9745.) When, as here, there has been a change of judge between the time the motion for a new trial was made and the time when a hearing was had on the same, the judge who heard the motion is the only one who is in position to certify what was before him and what he considered as the basis of his ruling on the motion.

In the certificate settling the bill Judge Horsky certified that the same was full, true and correct and contained all the evidence and testimony introduced upon the trial, except certain written documents, as well as the instructions proposed on the part of the parties and by the court refused, and all of the proceedings had at the trial which were before the court during the presentation and consideration of the motion for a new trial and thereafter until and including the hearing and decision on said motion, as well as the proceedings had on the settlement of the bill. It would appear that he was the only person who could determine and judicially certify what was before him at the hearing on the motion and what he considered in passing upon the same, and

that so far as the determination of the motion for a new trial was involved, he was the "judge who tried or heard the case" within the contemplation of section 9390, Revised Codes of 1921. We conclude that the first ground of the motion is not well taken.

The other two grounds, viz., that the motion for a new trial of the cause was not heard in time and that the bill of exceptions was not presented for settlement within the time allowed by law, will be treated together.

Section 9390, Revised Codes of 1921, outlines two methods of settling a bill of exceptions for the purpose of enabling one on appeal to present the proceedings had at the trial. The second of these methods relates to a situation where no motion for a new trial is made and need not be considered here. The other method which is applicable in this instance has to do with the settlement of a bill where a motion for a new trial has been made.

Section 9400 provides that the hearing of the motion for a new trial must be had within ten days after the notice of motion is filed, when the motion is made only on the minutes of the court, and within ten days after the filing of affidavits and counter-affidavits when the motion is made on affidavits, and further says: "The court may continue the hearing for not to exceed thirty days when engaged in the trial of cases at the time set for said hearing, or when for any other cause the court is unable without serious inconvenience to hear the matter on the day fixed." Since Judge Lynch deemed himself disqualified in the case, he was never in a position to hear and determine the motion for a new trial, and the order which he made on his own motion, continuing the hearing from June 6, the date theretofore fixed for hearing the same by order of the court based on the stipulation of the parties, to June 9, amounted only to the arrangement of the calendar or the regulation of the order of business of his court as authorized by section 8868, Revised Codes of 1921.

The order made by Judge Horsky on his own motion, continuing the hearing on the motion for a new trial from June 9 to June 10, did not recite the reason why the same was not heard on the former date. It did not recite that the court was engaged in the trial of other cases or that for any other reason the court was unable to hear the matter at the time fixed without serious inconvenience. It would seem that if either of these conditions existed, the order of continuance should have so stated. However, the latter date, June 10, was well within the thirty-day limit of time to which the court might have continued the hearing under the statute, since the notice of motion was filed on May 17. The question is then presented whether the failure of the court to make the necessary recitals in the order of continuance from June 9 to 10 deprived the plaintiff of the right to have his motion for a new trial heard and disposed of.

The plaintiff was not in any respect at fault. He did not make the order and so far as the record shows he did not ask to have the hearing continued, but on the contrary he had done everything which the law required of him in the prosecution of his motion for new trial. The defect in the recitals of the order was due to the act of the judge who made the same. In the case of *Hale* v. *Belgrade Co., Ltd.*, 75 Mont. 99, 242 Pac. 425, this court quoted with approval the following language found in a note to *Cincinnati Traction Co.* v. *Ruthman,* 85 Ohio St. 62, 96 N. E. 1019, reported in Ann. Cas. 1913A, 914: "It has been stated as a general proposition of law that, where an individual in the prosecution of a right does everything which the law requires him to do, and he fails to attain his right by the misconduct or neglect of a public officer, the law will protect him. * * * It is by virtue of this principle that it is held that, where a bill of exceptions is presented to the judge for his signature, within the time required by law, and [he] neglects to sign [it], * * * the bill of exceptions will not be rendered invalid, and the signing of the same *nunc pro tunc* is proper."

We think the principle thus enunciated is applicable to the facts here under consideration and that the failure of the judge to make the proper recitals in the order of June 9 did not operate to deprive the plaintiff of the right to have his motion for a new trial heard and disposed of. And, as pointed out in connection with our consideration of the first ground of the motion to strike the bill of exceptions from the record, this motion was denied by order of the court made and entered on the twenty-fifth day of June and the bill of exceptions was allowed and settled on the thirtieth day of June.

Counsel contend that because the notice of motion stated that certain grounds thereof would be based upon affidavits and no affidavits were filed, the notice became one based only upon the minutes of the court and that under the provisions of section 9400, Revised Codes of 1921, the motion was required to be heard within ten days after the notice of motion was filed; that because it was not heard within that time the court lost jurisdiction over it. In that connection counsel cite certain language used in the opinion on rehearing in *Sell* v. *Sell*, 58 Mont. 329, 193 Pac. 561. The situation here, however, differs from that in the *Sell Case.* Here by written stipulation entered into by counsel before the expiration of the ten-day period in which the statute specifies that the motion for new trial based on the minutes of the court should be heard, the hearing on the motion was continued to June 6, which was beyond the ten-day period after the service of the notice of motion but within the time to which the court could have ordered the hearing to be continued. By this stipulation counsel are estopped from contending that the hearing was not had in time. (*Hale* v. *Belgrade Co., Ltd.,* supra.)

For the reasons above indicated the motion to strike the bill of exceptions from the record is denied, and we pass to a consideration of the errors assigned upon which the plaintiff relies for a reversal of the judgment.

1 and 2. Specifications of error 1 and 2 are directed to the rulings of the court upon the admissibility of the testimony of Branston G. Stevenson, in which he stated the tank wagon price of gasoline in Butte between September 20, 1923, and March 7, 1924, and the retail price of gasoline at the same place between October 11, 1923, and March 27, 1924.

Under the evidence introduced at the trial neither the tank wagon price of gasoline nor the retail price thereof at Butte at any time prior to April 17, 1924, the date of the written order for the fifty carloads of gasoline was material. Since the written order for the fifty carloads fixed the price at a spread of six cents below the tank wagon price, and the plaintiff testified that in Butte the tank wagon price and the retail price had been ''one and the same'' during the period of time here involved, these prices after that date became material, but they were not shown by the testimony under consideration. Although under the issues presented this testimony was immaterial and for that reason the court's ruling admitting it was technically erroneous, it is not obvious to us how its admission was harmful to the plaintiff and so prejudicial to his rights as to require a reversal of the judgment in the cause.

Section 9191, Revised Codes of 1921, directs that the court must, in every stage of an action, disregard any error in the proceedings which does not affect the substantial rights of the parties, ''and no judgment shall be reversed or affected by reason of such error or defect.'' In *White* v. *Chicago, Milwaukee & St. Paul Ry. Co.*, 49 Mont. 419, 143 Pac. 561, it is asserted that technical error in the admission of evidence is not ground for reversal unless it appears that the rights of the party complaining have been prejudiced by it. And in *Montana Livestock & L. Co.* v. *Stewart*, 58 Mont. 221, 190 Pac. 985, it is said: ''An appellate court will not reverse a judgment merely because the lower court erred; it is only where the error has materially affected the appellant's rights

on the merits of the case." (See, also, *Dewell* v. *Northern Pac. Ry. Co.*, 54 Mont. 350, 170 Pac. 752.)

3. It is next specified that the court erred in permitting the witness L. C. Stevenson to testify concerning the amount of profit made by the defendant on gasoline manufactured by it between September 20, 1923, and April 1, 1925. It was not material to any issue in this case whether the defendant did or did not make a profit on the gasoline it sold to plaintiff and the objection to this testimony should have been sustained. But what is said concerning the testimony of Branston G. Stevenson referred to in the last preceding paragraph is applicable to this.

4. The fourth specification is that the court erred in sustaining the defendant's motion for a directed verdict on each of the causes of action numbered 29 to 88, inclusive. Each of these causes of action was based on the allegation that after defendant had sold and delivered a car of gasoline to plaintiff, it made certain false and fraudulent representations to plaintiff by means of which it induced him to pay an additional two cents for each gallon of gasoline so sold and delivered. The gasoline involved in the carloads mentioned in these causes of action is the same as that involved in the carloads enumerated in causes of action 1, 2, and 4 to 14, inclusive, which were submitted to the jury and concerning each of which the plaintiff's testimony showed that whatever statements or representations were made by the defendant were made at or before the time when the contract of sale was made. Therefore, there was no evidence upon which the jury would have been justified in returning a verdict in favor of plaintiff upon any one of these causes of action and the court did not err in withdrawing them from the consideration of the jury.

5. By instruction numbered 1A, given at the request of the defendant over the objection of the plaintiff, the court instructed the jury in the words of subdivision 3 of section 10672, Revised Codes of 1921, "that a witness false in one

part of his testimony is to be distrusted in others," and this is assigned as error. The statute says that this instruction shall be given to the jury "on all proper occasions." Plaintiff contends that on the record in this case the occasion for giving such an instruction did not present itself.

The propriety of giving such an instruction is lodged largely in the discretion of the trial court and it is to be given or not according to the court's view of the conditions presented by the evidence (*McCrimmon* v. *Murray*, 43 Mont. 457, 117 Pac. 73), and on the record in this case we cannot say that the trial judge who heard all the testimony of the witnesses and had the opportunity of observing their demeanor on the stand and saw their manner of testifying, abused his discretion in determining that the occasion for the giving of this instruction was a proper one.

6. By the sixth specification of error counsel for plaintiff question the propriety of an instruction given by the jury by the court, to the effect that one cannot perpetrate fraud upon another by making any statement or representation as to the scope, operation or effect of an existing law. This instruction was objected to on the ground that it was not the law, not within the issues of the case, and would mislead the jury.

Counsel's only argument in support of the objection is that the instruction was but the statement of an abstract proposition of law, without any attempt to connect it in the case or any rule laid down in any other instruction given by the court. Counsel do not discuss the question whether the law is correctly stated in the instruction given, and we shall not.

In *Bosqui* v. *Sutro R. R. Co.*, 131 Cal. 390, 63 Pac. 682, the court, relying upon the authority of *People* v. *Cochran*, 61 Cal. 548, said: " 'If an instruction in a case is asked which refers to facts which there is no evidence to prove, it is not error to refuse to give it and, if given, although in fact erroneous in the abstract, it will not be regarded as an error

for which the judgment will be reversed, unless it be manifest that the jury was misled by it to the prejudice of the defendant. Presumptively, however, an erroneous proposition of law, referring in no way to the evidence in the case submitted to the jury, has not prejudiced the defendant.' If this latter statement be true, surely a correct proposition of law under like circumstances would not necessarily mislead the jury.'' It is not error to state correctly an abstract proposition of law in the absence of any request that it be explained or enlarged upon. (Randall's Instructions to Juries, sec. 122; *Hansen* v. *Gaar Scott & Co.*, 68 Minn. 68, 70 N. W. 853.)

7 and 8. The court gave the jury all of the instructions requested by the plaintiff, being instructions 1 to 7, inclusive. By instruction numbered 1, deceit is defined in the terms of the statute. (Sec. 7575, Rev. Codes 1921.) Making application of this definition to the facts in the case, the court advised the jury that if it appeared by a preponderance of the evidence that the defendant (1) suggested as a fact that which was not true and which it did not believe to be true, (2) asserted as a fact that which was not true and which defendant had no reasonable ground for believing to be true, or (3) made a promise without intention of performing it, and that plaintiff believed such suggestion or assertion to be true and relied and acted upon the same, or that such promise was made by defendant without any intention of performing it, and paid to the defendant two cents in excess of the price otherwise agreed upon for each gallon of gasoline sold by defendant to plaintiff, as plaintiff would not have done if such suggestion, assertion or promise had not been made by defendant, and relied and acted upon by plaintiff as alleged in the causes of action contained in the complaint, their verdict should be for the plaintiff and against the defendant.

By instructions 4 and 5 the jury was likewise advised that if it appeared by a preponderance of the evidence in the case that the allegations contained in the causes of action

set out in the complaint were true, its verdict must be for the plaintiff and against the defendant on said causes of action.

By instructions 4a and 5a, given at the instance of the defendant, the jury was instructed that the burden of proof in the case was upon the plaintiff, and that before they could return a verdict in his favor upon any of the causes of action set out in the complaint he must prove by a preponderance of the evidence each of the material allegations set out therein and that if they found the evidence evenly balanced or that it preponderated in favor of the defendant as to any material allegation, then they should resolve such issue in favor of the defendant.

The plaintiff assigns as error the giving of instructions 4a and 5a on the ground that they did not point out what were the material facts at issue, and that there were several acts and declarations of deceit set out in each cause of action, and that the effect of the instructions was that the verdict of the jury must be in favor of the defendant unless the plaintiff had proven each and all of said acts and declarations, whereas proof of any one thereof would entitle the plaintiff to prevail.

The instructions of the court to the jury must be considered in their entirety, and where as a whole they correctly state the law, and where instructions general in their nature are by specific instructions limited to the facts in the case, error cannot be predicated on an instruction that is incomplete or too general. (*State* v. *Colbert*, 58 Mont. 584, 194 Pac. 145; *State* v. *Smith*, 57 Mont. 563, 190 Pac. 107; *Surman* v. *Cruse*, 57 Mont. 253, 187 Pac. 890; *Pure Oil Co.* v. *Chicago, Mil. & St. P. Ry. Co.*, 56 Mont. 266, 185 Pac. 150; *Scott* v. *Waggoner*, 48 Mont. 536, L. R. A. 1916C, 491, 139 Pac. 454.)

By instruction 1 the court defined and specifically pointed out the acts of deceit which plaintiff was required to prove in order to entitle him to prevail, and then advised the jury that if they found any one of the three enumerated condi-

tions to have been established by the plaintiff, their verdict must be in his favor. These conditions were stated in the disjunctive and no one reading this instruction could have been led to the opinion that it was necessary for the plaintiff to establish each and all of them to entitle him to prevail. Likewise, in connection with each of the three conditions pointed out, the court indicated to the jury just what facts the plaintiff was required to establish to entitle him to prevail. While the court did not in so many words state that the facts thus indicated were the material issues in the case, a juror reading this instruction would experience no difficulty in determining exactly what it was necessary for him to decide in order to give his verdict in favor of the plaintiff. In other words, he would be able to determine from this instruction what the material issues were upon which he was to pass judgment.

Reading instructions 1, 4a and 5a together, as we are required to do, it does not seem that the general language of the latter instructions could have misled or confused the jury. Counsel for plaintiff must have had a similar idea in mind when they prepared and requested the court to give instructions 4 and 5, for they are couched in language as broad and general as instructions 4a and 5a of which complaint is made. Taking the instructions as a whole, we think the court did not err in giving instructions 4a and 5a.

9. The ninth assignment of error is that the court erred in giving instruction numbered 1B, which was given at its own motion. The material portion of instruction 1B, mentioned in this assignment, is as follows: "You are instructed that you must return your verdict for the defendant and against the plaintiff in all causes of action set forth in plaintiff's complaint, save and except the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth causes of action set out in said complaint."

Aside from the causes of action disposed of in consideration of specification of error numbered 4, there were included in this instruction causes 3, and 16 to 28, inclusive, the consideration of which was under this instruction withdrawn from the jury. But counsel for plaintiff, in their briefs, do not contend that there was any error in withdrawing consideration of these causes of action from the jury, and therefore this assignment of error is disposed of by what is said in connection with specification No. 4.

10. Finally, plaintiff asserts that the court erred in overruling his motion for a new trial, and under this specification argues that the evidence preponderates against the verdict of the jury.

The supreme court will review a case upon the theory upon which it was tried in the district court (*Smith* v. *Barnes,* 51 Mont. 202, Ann. Cas. 1917D, 330, 149 Pac. 963), and in determining what that theory was resort may be had to the instructions which the court was requested to give. (21 Ency. Pleading & Practice, p. 609; *Cleveland, C. C. & St. Louis R. R. Co.* v. *Stephens,* 74 Ill. App. 586; *Leavenworth & S. Ry. Co.* v. *Curtan,* 51 Kan. 432, 33 Pac. 297; *Horgan* v. *Brady,* 155 Mo. 659, 56 S. W. 294; *Van* v. *Rouse,* 94 N. Y. 401.)

As above pointed out, it appears that the court gave all the instructions requested by the plaintiff, and in the first of them the jury was told in the language of subdivisions 1, 2 and 4 of section 7575, Revised Codes 1921, that deceit may consist either (1) in the suggestion as a fact of that which is not true by one who does not believe it to be true; (2) the assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true, and (3) a promise made without any intention of performing it. And this was followed by language advising the jury just what conditions must have been established by the evidence in order to entitle the plaintiff to prevail under either of the provisions named in the instruction.

It is, therefore, apparent that the plaintiff's theory on the trial of the case was that in order to prevail he must by the evidence which he introduced bring himself within one of the conditions named in this instruction, and that if he did not do so the verdict of the jury must necessarily go for the defendant.

The questions of fact presented under the three divisions of the court's instruction above referred to were for the determination of the jury in the first instance, but that determination was subject to review by the trial court on motion for a new trial. If the presiding judge was satisfied, as he must have been when he denied the plaintiff's motion for a new trial that the preponderance of the evidence was with the defendant and in accordance with the verdict of the jury, it was his duty to deny the motion for a new trial based upon the grounds now under consideration.

A motion for a new trial on the ground of insufficiency of the evidence is addressed to the sound legal discretion of the trial court and its order thereon will not be disturbed unless there was a manifest abuse of that discretion. (*Brange* v. *Bowen*, 57 Mont. 77, 186 Pac. 680; *Jones* v. *Shannon*, 55 Mont. 225, 175 Pac. 882.) The trial judge, in passing upon such a motion, occupies a position of advantage not possessed by the members of this court who are obliged to rely upon the cold printed record, for he may call to his aid his recollection of the appearance of the witnesses upon the stand and their conduct in giving their testimony at the trial.

With these established principles in mind we proceed to consider whether the trial judge manifestly abused his discretion in denying the plaintiff's motion for a new trial on the ground of the insufficiency of the evidence.

At all the times involved in the transactions between the plaintiff and the defendant involved in this controversy, and when the statements, representations and promises are alleged to have been made to the plaintiff, as testified to by

him, there was on the statute books of this state Chapter 150 of the Laws of 1923, imposing upon distributors of gasoline, such as the defendant in this case was shown to be, a license tax of two cents per gallon on each gallon of gasoline sold by such distributors in this state. Presumably this was a valid legislative enactment and every intendment was in favor of upholding its constitutionality. (*State ex rel. Bonner* v. *Dixon,* 59 Mont. 58, 195 Pac. 841, and numerous cases therein cited.) Until the decision of this court in *State* v. *Sunburst Refining Co.,* 73 Mont. 68, 235 Pac. 428, on April 4, 1925, holding that legislative enactment invalid, it was presumed to be the law of the state, and all persons dealing with the subject matter therein embraced had a right to rely upon it.

A legal decision adverse to the statements and representations made cannot establish deceit for which a party may be held liable in an action. (*Duffany* v. *Ferguson,* 66 N. Y. 482; *Levin* v. *Sweet,* 147 App. Div. 894, 132 N. Y. Supp. 110; *Bank of the United States* v. *Daniel,* 12 Pet. (U. S.) 32, 9 L. Ed. 989.)

"Knowledge of facts is one of the elements upon which fraud is predicated and when a person does not know and from the circumstances existing it is apparent cannot know and in fact it would be impossible for such person to have such knowledge, it would be doing violence to the principle upon which fraud and deceit is predicated to hold that he is responsible." (*Duffany* v. *Ferguson,* supra.)

As to the suggestions and assertions of fact made by defendant to plaintiff, to the effect that it would have to charge plaintiff two cents per gallon for the state tax, that it would have to pay that amount to the state, can it be said that in view of the existence of the above enactment upon the statute books of this state when the same were made, the defendant did not either believe them to be true or that it had no reasonable ground for believing them to be true? The record is to the contrary of such a contention.

The defendant's president testified that down to April 1, 1924, it intended without question to pay the two cents per gallon distributors' license tax, but had not done so because the company was very much strained financially and had been in constant touch with the state board of equalization with reference to granting it leniency, but that when suit was brought against it to collect the tax, it decided to question the constitutionality of the law imposing it. This is the only testimony in the record bearing directly upon the defendant's intentions and belief as to the necessity of making payment of the distributors' license tax upon the gasoline sold by it, and this testimony was neither contradicted nor its credibility impeached. Under this testimony and in consideration of the law as it then stood upon the books, it seems clear that it fails to show that the defendant violated the inhibitions set out in either of the first two divisions of the definition of "deceit" given to the jury by the court in its first instruction.

We now pass to the third subdivision of the definition of the word "deceit" as given by the court in this instruction and consider whether the testimony so clearly preponderates against the determination of the jury that the defendant did not make a promise to the plaintiff that it would pay to the state of Montana two cents distributors' license tax on each gallon of gasoline which he bought from it, without any intention of performing the same, that it can be said that the judge of the trial court manifestly abused his discretion in not granting the plaintiff's motion for a new trial on that ground.

In arriving at a solution of this problem it is first necessary to determine whether the defendant in fact made the promises claimed by plaintiff to have been made by it. "The expression of an intention to do a thing is not a promise to do it. An intention is but the purpose a man forms in his own mind; a promise is an express undertaking or agreement to carry the purpose into effect." (*Stewart* v. *Reckless,*

24 N. J. L. 427; *Shaw* v. *Burney*, 86 N. C. 331, 41 Am. Rep. 461.)

Turning to the record in the case we find that in addition to the statements made to the plaintiff by the defendant's agents, which are set forth in the first part of this opinion, it is replete with assertions said to have been made by these agents to the effect that the tax had to be paid to the state by the defendant and that that was the reason they were collecting it from the plaintiff; that plaintiff understood and believed the defendant was paying the tax; that he paid two cents with this understanding in mind, and that he would not have done so but for this understanding and belief. The most that can be said of this testimony is that the jury might possibly have been warranted from all of it, taking into consideration the situation of the parties and the circumstances under which the statements and assertions were made, that the defendant did make the promises which the plaintiff now contends it made. The jury evidently did not find this to be the fact, and it was for it in the first instance to make a determination of this issue and this was subject to review by the presiding judge on the motion for a new trial, and it was decided by him in harmony with the verdict of the jury.

From a consideration of the entire record we cannot say that the trial judge manifestly abused his discretion in such decision, and for this reason, under our authorities above cited, we cannot disturb it.

Upon a consideration of the entire case, we find no reversible error in the record and the judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Myers, Matthews and Galen concur.