STATE, Respondent, *v.* KELLER, et al., Appellants.

No. 9166.

Submitted April 22, 1952. Decided July 28, 1952.

246 Pac. (2d) 817.

Mr. Franklin S. Longan, Billings, Mr. F. F. Haynes, Forsyth, for appellants.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Charles V. Huppe, First Asst. Atty. Gen., Mr. John L. McKeon, Asst. Atty. Gen., Charles B. Sande, County Atty., Billings, for respondent.

Mr. Longan and Mr. McKeon argued orally.

MR. JUSTICE ANGSTMAN:

Defendants were charged with obtaining money by false pretenses on or about August 14, 1951, in that they defrauded the Elliott Seed Company of Billings of $239.60 by representing that a load of shelled corn which they sold to the seed company

weighed 39,715 pounds, when in fact it weighed only 32,771 pounds, and that by these representations defendants obtained from the seed company and cashed a check for $1,370.16, when in fact they should have received a check for $1,130.56, thereby obtaining $239.60 with the intent to defraud the seed company. They were found guilty. They have appealed from the judgment rendered on the verdict.

It appears from the record that on August 11, 1951, defendants procured three truck loads of shelled corn from George E. Merry at Creston, Nebraska. The corn was transported from Creston, to Billings, Montana, in three trucks.

The Elliott Seed Company bought one truck load from defendant Joe Keller. The seed company scales were too small to weigh a large truck load so the weighing was done at the Occident Elevator scales which was several blocks distant from the seed company's place of business. The load sold was in a green truck and the person weighing the load became suspicious and followed the truck as it left the scales. He noticed that the truck stopped after going about five blocks and observed corn being scooped off the green truck onto another truck parked by the curb.

The corn was dumped into an empty bin at the seed company's place of business. The day after the corn was unloaded and paid for at the weight shown by the Occident Elevator scales, it was removed from the bin in which it had been dumped and reweighed. In the reweighing process seven trips were made between the seed company's place of business and the Occident Elevator scales where the reweighing took place. This weight was 6,944 pounds short of the weight of the day before.

The state's contention is that this shortage was due to the fact that part of the corn had been scooped off of the green truck onto another after it had been weighed by the Occident Elevator scales and before it was dumped into the seed company bin.

Defendants admit that some of the corn had been scooped off of the green truck onto another truck but assert that this was

done before the weighing took place. More of the facts disclosed by the evidence will be alluded to as we discuss the legal questions presented.

The first assignment of error is that the court erred in unduly restricting the cross-examination of state's witness Miller Robert Fulp. He is the sales clerk of the Occident Elevator Company who weighed the green truck and then followed it and observed defendants scooping some of the corn into another truck. Twenty or thirty minutes prior to that he weighed another truck driven by defendant Keller's son. The green truck was driven by defendant Piveral and Keller's son. He, Fulp, said he went to work about eight o'clock in the morning and Mr. Wallace, another employee, was already there. He said it seemed about an hour later when he weighed the first truck. On the cross-examination of Mr. Fulp it was developed that when he opens the place in the morning he usually sweeps the floors and stacks feed and if trucks come in, he and Wallace take turns in weighing them. He said he did the sweeping that morning. He was then asked, "How large an area did you sweep and clean up that morning?" The state's objection to that question was sustained. The witness then admitted that he was guessing as to the time that elapsed between the time when he went to work and when he weighed the first truck. The question was then repeated as to the size of the area he swept that morning and the objection was again sustained. Further cross-examination brought out the fact that the witness left the elevator about 9:20 a. m. to follow the truck but as to this he too was giving his best estimate.

It is the contention of defendants that they should have been permitted to cross-examine the witness on the subject of the area swept by him that morning in order to test his credibility as a witness. We fail to see how that question, no matter how it was answered, would affect the credibility of the witness on the vital point that he followed the green truck after weighing it and saw defendants scooping corn from it onto another truck.

The extent of sweeping done by the witness was a collateral

and immaterial matter. While a wide latitude should be allowed on the cross-examination of a witness, State v. Howard, 30 Mont. 518, 77 Pac. 50; State v. Biggs, 45 Mont. 400, 123 Pac. 410; Moss v. Goodhart, 47 Mont. 257, 131 Pac. 1071; State v. McConville, 64 Mont. 302, 209 Pac. 987; State v. Ritz, 65 Mont. 180, 211 Pac. 298, and while the court may permit examination into collateral matters when they affect the credibility of a witness, we are not able to say that there was an abuse of discretion here.

R. C. M. 1947, sec. 93-401-25, provides: "Evidence must correspond with the substance of the material allegations, and be relevant to the question in dispute. Collateral questions must therefore be avoided. It is, however, within the discretion of the court to permit inquiry into a collateral fact, when such fact is directly connected with the question in dispute, and is essential to its proper determination, or when it affects the credibility of a witness."

That the trial court may control the cross-examination of witnesses is further provided for in R. C. M. 1947, sec. 93-1901-3, which reads: "The court must exercise a reasonable control over the mode of interrogation, so as to make it as rapid, as distinct, as little annoying to the witness, and as effective for the extraction of the truth as may be; but, subject to this rule, the parties may put such pertinent and legal questions as they see fit. The court, however, may stop the production of further evidence upon a particular point when the evidence upon it is already so full as to preclude reasonable doubt."

The court simply refused to permit counsel for defendants to get the attention of the jury diverted from the question at issue to immaterial side issues.

The next point raised by defendants is that they were unduly restricted in the cross-examination of the witness George J. Newlin. Mr. Newlin was the warehouseman for the Elliott Seed Company. He said he first saw the green truck load of corn a trifle after nine o'clock. It was gone about an hour and 15 minutes and then returned for unloading. Piveral was one of

the three people with the truck and helped unload it. It was put in an empty bin. He loaded corn into an International truck for reweighing. It was reweighed at the Occident Elevator. It was then again placed in another empty bin. It took seven trips to get the corn reweighed. On cross-examination the witness was asked why the corn was not reweighed with the Elliott Seed Company scales and he said he did not know. He said the seed company had standard scales but that they had orders to have the corn weighed at the Occident Elevator Company. He was asked what the maximum weighing capacity of the Elliott Seed Company scales was and he said, "Well, I don't know if I can tell you what it is." Counsel for defendants then propounded this question: "I would be glad to have your approximation, sir, if you could." Objection to this question was sustained and defendants predicate error in so doing. We fail to see how defendants could have been prejudiced by this ruling of the court.

The witness had testified that he had orders to have the corn weighed at the Occident Elevator Company and obviously the approximate capacity of the Elliott Seed Company scales by one who didn't know the capacity was of no moment. In other words, whatever answer the witness may have given would not be of benefit to defendants, since the witness was ordered to weigh the corn with the Occident Elevator Company scales. It was but natural to have the reweighing done by the same scales that made the original weighing. The court did not abuse its discretion in restricting the cross-examination of the witness Newlin as it did.

Defendants by several assignments of error question the propriety of the court's ruling in excluding evidence of the results of experiments made on the morning of the same day the witness was testifying in weighing barley on scales of the Occident Elevator at Laurel, Montana. He went to Laurel to conduct the experiment because there was a sign on the Occident Elevator scales at Billings where the corn in question here was weighed, reading, "Out of Order." The purpose of the testimony was to disclose that discrepancies or variations in weights

may be obtained, and thus by this method to account for the 6,944 pounds of shortage in this case. It developed that the sign was put on the elevator scales because the company was out of weigh slips and that the scales themselves were not in fact out of order.

The court gave defendants an invitation to make an experiment with the Occident Elevator scales in Billings by saying: "Well, as I indicated to counsel, when I called them to the bench, as long as this matter is going to the jury, the scales are available at the Occident Grain Elevator right here in town, which this identical grain was weighed on, and your witness has testified they are in the same condition now as they were at that time. Now then, with that showing there has been no request to weigh this grain on this scale here. Now, in view of that statement, if you have any further foundation to lay, why or as to why you should bring in other scales, I will hear that evidence. Now, if you can make a further foundation * * *''.

The question of the admission of experimental evidence is one addressed to the discretion of the trial court and its action will not be disturbed particularly where it appears that the experiments were made under essentially different conditions from those existing in the case on trial. State v. Allison, 330 Mo. 773, 51 S. W. (2d) 51, 85 A. L. R. 471; People v. Woon Tuck Wo, 120 Cal. 294, 52 Pac. 833; Beckley v. Alexander, 77 N. H. 255, 90 A. 878. Substantial similarity of conditions is all that is necessary to render such evidence admissible. 20 Am. Jur., Evidence, sec. 756, p. 628. "Whether the circumstances and conditions are sufficiently similar to render the results of the experiment competent is of course a preliminary question for the court, and unless too wide of the mark, the ruling thereon will be upheld on appeal." State v. Phillips, 228 N. C. 595, 46 S. E. (2d) 720, 722.

Here the scales of the Occident Elevator Company at Laurel may have exhibited an entirely different performance from those at Billings, and this even though they were of the

same make. The court did not abuse its discretion in excluding evidence of the result of weighing done on the Laurel scales, particularly since it gave every indication that it would permit an experiment on the Billings scales on which the weighing giving rise to this case took place.

Defendants contend that the court erred in permitting evidence of the reason why the sign "Out of Order" was hung on the Occident Elevator scales and in excluding evidence showing the condition of the scales at Laurel. It is contended that the evidence showing the reason for the "Out of Order" sign was hearsay. The record does not so disclose. So far as the record discloses the witness spoke from his own knowledge. Likewise we fail to see how that evidence could have prejudiced any rights of defendants. They were in legal effect invited to use the Occident Elevator scales at Billings to make an experiment if they so desired and the record shows that such an experiment would not have entailed much of a delay because the experiment relied on and made on the Laurel scales was made the very day that the testimony was offered. Also the testimony regarding the condition of the Laurel scales was immaterial and incompetent.

Defendants contend that the court erred in refusing their offered instruction No. 17 reading: "The verbal declaration of one co-defendant that he and the other co-defendant were partners is insufficient to establish a partnership relation." There was evidence in the record which went in without objection to the effect that Keller told Mr. Cunningham, the police detective for the city of Billings, that he and Piveral were partners and that they had bought the corn in Nebraska.

Had objection been made to this evidence it should have been excluded. 40 Am. Jur., Partnership, sec. 84, p. 187; 68 C. J. S., Partnership, sec. 53, p. 471. The courts are not in agreement as to whether inadmissible hearsay, introduced without objection, has any probative value. In 64 C. J., Trial, sec. 242, p. 230, it is said: "Hearsay evidence, admitted without objection,

should be considered and given its natural probative effect, subject to any infirmative suggestion due to its inherent weakness, and may establish a material fact in issue, and sustain a verdict or judgment. But such evidence should be given only the weight to which it is entitled, and the failure to object adds no weight to the evidence if intrinsically it had none. In some jurisdictions it has been held that hearsay evidence, although admitted without objection, is without probative force and will not sustain a finding when unsupported by other evidence.'' Cases are there cited supporting the divergent views.

We think the rule which should be applied here is that announced in the case of General Service Garage v. Lexington Oil Co., 274 Ky. 330, 118 S. W. (2d) 690, 693, where the court said: ''There is no competent evidence to show that Mr. Mohr was a partner of Kitchen and Wheeler or that he had any interest in the John L. Kitchen Company. Mr. N. A. Chrisman as above noted testified that Kitchen and Wheeler stated to him that Mohr was a partner in the John L. Kitchen Company. The integrity and credibility of this witness and the verity of his statements cannot be questioned but it must be borne in mind that Mohr was not present and these statements were made by a third party out of court, therefore, the evidence did not arise above the dignity of mere hearsay. Such evidence of course would be incompetent and even if admitted without objections should not be permitted to outweigh positive and uncontradicted evidence to the contrary.''

Here the evidence aside from the declaration shows that the corn belonged to Mr. D. L. Hanna, who lives at St. Joseph, Missouri, and that defendant Piveral was simply driving the truck for Hanna; that in fact no partnership existed between defendant Keller and defendant Piveral. Hanna testified that he bought the corn from George Merry at Creston, Nebraska, and paid for it in cash. In this he was corroborated by Mr. Merry. The state contends, however, that evidence of a partnership was not essential to a conviction since the prosecution was

based on R. C. M. 1947, sec. 94-1805, and since in this state there is no distinction between an accessory and a principal, sec. 94-6423, and that all persons connected in the commission of a crime or who aid and abet in its commission are principals. Sec. 94-204. The difficulty with this contention is that the jury were not advised of the effect of the declaration tending to show a partnership and may have based their verdict on that testimony.

It is true that the court gave its instruction No. 22 reading: "You are instructed that in your consideration of this case, the ownership of the corn sold is not in issue, and should not be considered by you in arriving at your verdict." The state contends that if it was error to refuse to give offered instruction No. 17 it was cured or rendered harmless by the giving of court's instruction No. 22. But the jury may have given full consideration to the declaration relating to the partnership and may have found defendant Piveral guilty on the strength thereof even though the ownership of the corn was immaterial. The jury might have concluded from the declaration that they were partners in hauling the corn. We are mindful of the rule that where two or more persons have unlawfully conspired to commit a crime, the acts and declarations of any conspirator pending such conspiracy and in furtherance thereof are admissible against others on trial and that the same rule applies in the case of an unlawful combination short of a conspiracy. Wharton's Criminal Evidence, 11th Ed., Vol. 2, sec. 699, p. 1183. But that rule has no application after the common enterprise is at an end. Id., sec. 714, p. 1202.

Here the witness Cunningham did not enter into the picture until after the common enterprise, if such it was, was at an end. For failure to give instruction No. 17 or its equivalent as against defendant Piveral a new trial should be had as to him.

Other contentions have been considered but we find no basis for interfering with the verdict and judgment as it applies to defendant Keller.

The judgment against defendant Keller is affirmed. As to defendant Piveral the case is remanded for a new trial.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES METCALF, BOTTOMLY, and FREEBOURN, concur.