ROBERT HURLY, Administrator of the Estate of WILLIAM WITT, Deceased, Plaintiff, Respondent and Cross-Appellant, v. STAR TRANSFER COMPANY, a Corporation, Defendant, Appellant and Cross-Respondent.

No. 10308

Submitted September 11, 1962. Decided November 29, 1962.

376 P.2d 504

Leonard H. Langen, Glasgow (argued orally), for appellant.

John M. Kline, Glasgow (argued orally), Robert Hurly, Glasgow (argued orally), for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a verdict and judgment in favor of the plaintiff in the district court of the seventeenth judicial district.

For clarity, hereinafter, plaintiff-respondent and cross-appellant will be referred to as the plaintiff and defendant-appellant and cross-respondent as the defendant.

Plaintiff, administrator of the Estate of William Witt, deceased, brought this, a survivorship action, to recover damages for injuries to William Witt occasioned by an automobile accident that occurred on October 16, 1958, on U. S. Highway 2 just east of the main connecting road to Nashua, Montana. The accident involved a collision of a 1958 Ford automobile driven by plaintiff's decedent with defendant's flatbed trailer.

Defendant's tractor-trailer was driven by Sjur Gjerde, an employee of defendant. The tractor was a diesel Autocar with a length of twenty-six feet. The trailer was an Omaha flatbed with a distance of thirty-eight feet, nine inches from the pin where it attached to the tractor to the rear of the trailer. The overall length of the combined tractor-trailer was about fifty-nine and one-half feet. The trailer had rear tandem axles with dual wheels. At the time of the accident, the trailer was loaded with concrete pipe which weighed approximately 41,000 pounds. The total weight of the vehicle was approximately 70,000 pounds.

A description of the trailer lights and their location, which is important in this controversy, is as follows: (a) situated on the left-rear corner of the trailer inserted in an angular position, a red light which "shined" to the rear; (b) in the center of the left edge of the trailer and situated just under the trailer bed, an amber light which "shined" to the side; (c) on the left-

front corner of the trailer and placed in an angular position, an amber light which "shined" to the side and to the front.

Gjerde, traveling west, knew of a parking area on the south side of Highway 2 near the Nashua turnoff. Intending to stop there and rest, he drove his vehicle across the highway to the south side. At that point he decided not to proceed further because the slope into the parking area was too steep. He then commenced to back the vehicle into the proper traffic lane, backing up to a point where the tractor was completely in the north or proper lane. However, the rear of the trailer did not remain in a straight line with the tractor, but jack-knifed so that the left-rear part of the trailer backed around into the south traffic lane. Thus, the rear of the trailer was partly in the on-coming vehicular traffic lane and behind the glare of the tractor headlights in the dark and as will appear, inconspicuous to drivers coming toward the tractor-trailer from the west.

Regarding the position of the trailer at the time of the accident, Walter Magill, the City Engineer of Glasgow, testified that the distance from the center-line of the highway to the center of the tire print of the trailer's left-rear tandem tire, or the southern-most tire, was four and seven-tenths feet. The distance from the center of the same tire mark to the south edge of the pavement was eight and four-tenths feet.

While the tractor and trailer were in the aforementioned position the car driven by the decedent approached, traveling east. Gjerde did not have time to move the tractor and trailer, and the car collided with the left-front tandem dual wheels on the rear of the trailer.

It was 1:00 a.m. in the morning. The night was dark, but the weather was good and the atmosphere clear.

Two Montana Highway patrolmen who investigated the accident testified they made an experiment under circumstances similar to those that existed at the time of the accident to determine the earliest point at which the rear part of the trailer

could be observed by a driver approaching from the same direction as that of decedent. This was about three hours after the accident but the weather and the visibility had not changed. The tractor-trailer was left parked where it had been at the time of the accident. All of the lights on the tractor-trailer were still on. The damage to the trailer altered the condition of the trailer, but it did not change any of the trailer lights. The patrolmen approached the tractor-trailer from the same direction as that of decedent. They testified, over objection, that the point of impact was approximately fifty feet from the point that the trailer first became visible to anyone approaching from that direction.

Plaintiff's decedent was thirty-nine year old. He was in good health and employed as a parts manager for a car dealer at an annual salary of $6,600. He lived for a short time after the collision and during which time there was evidence that he experienced a great amount of pain and suffering from his injuries.

At the close of the submission of evidence, the court granted plaintiff's motion for a directed verdict except as to the issue of damages. The jury awarded $25,000 damages to plaintiff, and judgment was entered accordingly.

Thereafter, plaintiff filed a motion for a new trial. Then defendant filed a motion for a new trial. Both motions were denied. Both parties appealed. In this appeal both parties urge a reversal and ask for a new trial. The plaintiff asks that a new trial be granted on the issue of damages alone or, in the alternative, that a new trial be granted on all the issues. Prior to discussing plaintiff's contentions we will allude to those of the defendant.

Defendant's first specification of error raises the issue of whether or not the court erred in admitting testimony involving the results of the investigation or "experiment" conducted by the highway patrolmen. This was not error. It is within the discretion of the trial court to admit evidence of

an experiment. The trial court's decision thereon will not be disturbed on appeal where it appears that the experiment was conducted under substantially the same conditions as existed when the event in question occurred. Substantial similarity of conditions is all that is necessary to render such evidence admissible. State v. Keller, 126 Mont. 142, 246 P.2d 817; Ortega v. Pacific Greyhound Lines, 20 Cal.App.2d 596, 67 P.2d 702, see Richardson v. Farmers Union Oil Co., 131 Mont. 535, 312 P.2d 134. Here, the record shows that at the time of the experiment the tractor-trailer was in the same position that it was in at the time of the accident. All of the lights were still on. The physical damage to the trailer did not alter any conditions which would have altered the results of the experiment. Although the experiment was conducted about three hours after the accident the visibility and the weather remained the same. We are satisfied from our examination of the record that the experiment was conducted under substantially similar conditions as existed at the time of the accident.

■ Next, defendant contends that it was error to allow the highway patrolmen to answer hypothetical questions which assumed, among other facts, that a driver in a position the same as that of decedent was watching the right side of the road as he passed the glare of the tractor headlights. The error, if any, is not reversible unless defendant was prejudiced thereby. R.C.M.1947, § 93-3909; Russell v. Sunburst Refining Co., 83 Mont. 452, 272 P. 998. Defendant was not prejudiced since it had been previously established that decedent could not have avoided hitting the trailer had he been looking directly ahead, i. e., he could not have seen the trailer in time to avoid it had he been looking directly ahead.

■ Defendant urges as error the refusal of the trial court to follow defendant's theory on the measure of damages in a survivorship action so far as impairment of earning capacity is concerned. This specification of error is without merit. The trial court followed the rule on damages as announced by this

court in Dillon v. Great Northern Ry., 38 Mont. 485, 100 P. 960, and Beeler v. Butte & London Copper Development Co., 41 Mont. 465, 110 P. 528. We see no reason for departing from that rule.

█ █ Defendant specifies as error the granting of plaintiff's motion for a directed verdict and the giving of instruction number 2. Defendant argues that there was a question of contributory negligence to be submitted to the jury in that decedent was speeding. Assuming, arguendo, that decedent violated the night speed limit, and as such was guilty of contributory negligence, such negligence must then be the proximate cause of the injury in question. Fulton v. Chouteau County Farmers' Co., 98 Mont. 48, 37 P.2d 1025, see Dahlin v. Rice Truck Lines, 137 Mont. 430, 352 P.2d 801. Plaintiff established that the decedent could not have seen the trailer in time had he been traveling at a speed considerably under the night speed limit. Highway Patrolman Livingston testified that an automobile going forty miles an hour would travel fifty-five feet in the time it would take an average driver to react when suddenly confronted with a dangerous situation. The experiment showed that decedent could not have seen the rear of the trailer until he was approximately fifty feet from the point of impact. Thus, he could not have avoided the trailer had he been going sixty, fifty-five or forty miles per hour. Exceeding the night speed limit of fifty-five miles per hour therefore could not have been the proximate cause of the injuries.

█ Defendant contends that there was a question of whether or not defendant's driver was negligent. The evidence conclusively established that defendant's trailer was backed over the highway center-line into decedent's traffic lane. Under sections 32-2151, 32-2152, and 32-2159, defendant's driver was negligent as a matter of law. Rader v. Nicholls, 140 Mont. 459, 373 P.2d 312.

█ Since decedent's contributory negligence, if any, was not the proximate cause of the injuries and defendant's driver

was negligent as a matter of law, the case, as to those questions, presented only a question of law. When a case presents only a question of law a directed verdict is proper. Section 93-5205, R.C.M.1947; Richardson v. Crone, 127 Mont. 200, 258 P.2d 970.

Instruction 2 merely instructed the jury that they were not to consider any questions of negligence or contributory negligence. In view of what has already been stated in regard to the directed verdict, it is apparent that the giving of instruction 2 was not error.

In his appeal from the $25,000 damage award, plaintiff contends that the trial court erred in refusing to grant a new trial on the issue of damages. Plaintiff urges that the amount of damages awarded is inadequate. We note that section 93-5603, subd. 5, R.C.M.1947, provides that a new trial may be granted on the ground that the damages awarded are excessive, appearing to have been given under the influence of passion or prejudice. There is a question under 93-5603, supra, of whether or not a new trial may be granted solely on the ground that the award of damages is inadequate but we need not now decide that.

In refusing to grant plaintiff's motion for a new trial, the court approved the amount of damages awarded. Pertinent at this point is Teesdale v. Anschutz Drilling Co., 138 Mont. 427, 357 P.2d 4, 12, wherein this court quoted from Dahlin v. Rice Truck Lines, 137 Mont. 430, 352 P.2d 801, as follows:

" '* * * The rule has been established in this state that the amount of damages is committed first to the discretion of the jury, and next to the discretion of the trial judge, who, in passing upon the motion for new trial, may set it aside if it is not just. * * * In Fulton v. Chouteau County Farmers' Co., supra, 98 Mont. 48 at page 74, 37 P.2d 1025, at page 1034, it was said:

" ' "We must bear in mind that, in this class of cases, 'there is no fixed measuring stick by which to determine the amount of damages, other than the intelligence of the

jury' (McNair v. Berger, 92 Mont. 441, 15 P.2d 834, 839), to whom, of necessity, is allowed a wide latitude, and 'so long as we have a system which confides to juries the duty to determine the issues involved in this character of cases and to fix the amount of compensation to be paid unless the result of their deliberation is such as to shock the conscience and understanding, it must be accepted as conclusive' (Autio v. Miller, [92 Mont. 150, 11 P.2d 1039], above); 'this court will not substitute its judgment for that of the jury, especially where, as here, the trial court has approved the verdict by denying the motion for a new trial.' (McNair v. Berger, supra)" '."

In the Teesdale case, supra, the question was whether or not the damages were excessive. In this case the question is whether the damages are adequate. However, in both instances the basic consideration is the amount of damages. As has been pointed out, the fixing of the amount of damages is first within the discretion of the jury. Next, in passing upon a motion for a new trial, the amount is left to the discretion of the trial judge who may set it aside if it is not just. From the record we cannot find that the amount of damages awarded is not just. The trial court properly exercised its discretion in denying the motion for a new trial on that ground.

For the reasons stated, the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, MR. JUSTICES ADAIR, JOHN C. HARRISON, and the HONORABLE W. W. LESSLEY, District Judge, sitting in place of MR. JUSTICE DOYLE, concur.