## HORGAN, Appellant, v. BRADY, Administrator.

### Division One, March 30, 1900.

1. **Appellate Practice: CHANGING THEORY ON APPEAL.** A party is limited on appeal to the theory upon which he tried his case in the lower court, and will not be granted a reversal upon a proposition of law in conflict with instructions given at his own request.

2. ————: ————: CASE ADJUDGED. In an action on account for board and lodging brought by an aunt against the estate of her deceased nephew, who had resided with her for many years before his death, where the instructions given at the request of both parties required the plaintiff to prove the existence of a mutual agreement or intention that the board and lodging in controversy should be charged for and paid for, *held*, that a judgment in defendant's favor should not be reversed, notwithstanding the plaintiff, upon a correct theory of the case, may have been entitled to recover upon an implied contract.

Appeal from St. Louis City Circuit Court.—*Hon. Jacob Klein*, Judge.

AFFIRMED.

*P. Wm. Provenchere* for appellant.

(1) When one receives services, or board and lodging, the law implies a promise to pay therefor. Kinship, other than the relation of parent and child, does not overcome this presumption. Only as between parent and child does kinship make an exception in this rule. And, except as between parent and child, the burden is on defendant to overcome the presumption. Smith v. Milligan, 43 Pa. 107; Curry v. Curry, 114 Pa. St. 367; Guild v. Guild, 15 Pick. 129. (2) Even between parent and child, or in case of services done by one for another in whose family he lives as a member thereof, an implied promise to pay may be inferred from all

the circumstances; an express contract is not required. Ramsey v. Hicks, 53 Mo. App. 195; Guild v. Guild, 15 Pick. 129; Guenther v. Birkecht's Admr., 22 Mo. 439. (3) Instructions should be made to aid the jury and should be made clear to them. Stanley v. Union Depot Co., 114 Mo. 620. (4) In a case where the law will not require proof of an express contract but may imply one, or leave the jury to infer one, from all the circumstances, it is error to instruct the jury that "it devolves upon plaintiff to show, by preponderance of the evidence, the existence of an agreement to pay," without any explanation that such agreement need not be expressed, but might be implied or inferred from all the facts and circumstances. Carson v. Potter, 22 Mo. App. 184; Anchor Milling Co. v. Walsh, 37 Mo. App. 574; Stanley v. Union Depot Co., 114 Mo. 620. (5) An instruction which is not based on the evidence, or which submits to the jury an issue not made, or which leaves the jury to surmise and conjecture, is erroneous. Goltz v. Griswold, 113 Mo. 144; Wilkerson v. Eilers, 114 Mo. 245; McCarthy v. Fagin, 42 Mo. App. 619; Moore v. Hawk, 57 Mo. App. 495.

*Wm. H. O'Brien* for respondent.

(1) This case is controlled by that of Whaley v. Peak, 49 Mo. 80. (2) Plaintiff and defendant, having both submitted instructions requiring the jury to decide whether as a fact the decedent was to be considered a member of plaintiff's family, the plaintiff is bound by that theory. Sprague v. Sea, 53 S. W. Rep. 1074. (3) "The law will not presume a promise to pay board as among members of the same family and persons more or less intimately or remotely related, where they are living together as one household and nothing else appears." Wilcox v. Wilcox, 48 Barb. 327. (4) The evidence shows that no charge was ever entered for board, etc., until after the death of Horgan, and this case by the

very instruction plaintiff submitted, comes under the rule frequently announced by this court, that what was intended as a gratuity can not be converted into a charge.   Whaley v. Peak, 49 Mo. 80; Hart v. Hess, 41 Mo. 441.   (5) The burden of proving his case, whether it be on express or implied contract, was on plaintiff. Thurston v. Perry, 130 Mass. 241.

MARSHALL, J.—The appellant's statement of this case is fair and impartial and it is therefore adopted.   It is as follows:

"This case was commenced in the probate court of the city of St. Louis.   The plaintiff having given notice, as required by the statute, filed there her account or statement of the items of her claim against the estate of Daniel Horgan, deceased.   Due notice having been given to James F. Brady, administrator of the estate, the parties came, and the case was tried by the court.   And on the evidence the court, Judge Rassieur, found for the plaintiff in the sum of $2,129.55, and allowed her claim for that sum, and placed the same in the fifth class.   From this judgment the defendant appealed to the circuit court, and there the case was tried de novo, before a jury, and, under the instructions of the court, the jury found for the defendant.   Plaintiff duly filed a motion for a new trial, which was overruled, and at the same term filed her bill of exceptions and appealed.   All exceptions were duly saved.   There are no pleadings.   The questions here presented arise on the instructions given by the court.   The account is for board, lodging and laundry furnished to and done for deceased from March 14th, 1885, to May 1st, 1894, excepting from August 1st, 1888, to January 1st, 1889, being 104 1-2 months at $20 a month, and for rent of certain premises; for money collected by deceased for and on account of plaintiff; for money loaned by plaintiff to deceased, aggregating in all, without interest, the sum of $2,918.90.  Plaintiff introduced evidence tending to prove the

several items of her account or statement.   That she furnished deceased with board, lodging and laundry at and during the times mentioned in her statement, namely from March 14th, 1885, to May 1st, 1894, excepting a period of five months, during which he was absent from the city, and that the same was reasonably worth, to-wit; $20 per month.   That deceased had from her the use and occupation of a room used as a lumber room or carpenter shop; a stable and cellar, all as stated in the account, at and during all the times mentioned in her account, and that the respective amounts charged for the rent or use of the same were reasonable. That the deceased collected on plaintiff's account certain sums of money, and that she loaned him certain sums, all as charged by her.   From the evidence it appears that the claimant is an old woman—a widow; that she had two pieces of leasehold property, which she had acquired through her deceased husband, one on the corner of Twenty-second and Biddle streets, and one on Division street near by.    That she rented her rooms to tenants, and that she had no other property or source of income.   Her deceased husband, also named Dan. Horgan, was the uncle of Daniel Horgan, against whose estate this proceeding is brought.  Daniel Horgan, the uncle, died in 1885.   At the time of his death, his nephew, against whose estate this proceeding is brought, was living at the home of his uncle and aunt, this plaintiff.   After the uncle's death, a Miss Long, a relative, spoke to him about having his aunt come and live with her, but deceased said never mind, that he was going to board with her, and he continued to live there.   Claimant treated him kindly and with affection; acknowledged him to be her nephew.   Witness stated that she treated him kindly; nursed him when he was sick; treated him as a mother.   Deceased died in April, 1896.   He was a bachelor, and at the time of his death was forty years of age, and had acquired some estate.   He was a man who was close in business affairs, and loth to pay out

money.  For a time he kept a coal yard on the premises, Twenty-second and Biddle, and used the shed or stable there. He also did work as a carpenter, and used, for a time, a room of claimant and a cellar under her house as a store-room for old lumber, old doors, window-frames, and the like. He carried on a small coal business; was something of a carpenter and builder.  He made in books belonging to claimant, from time to time, not regular accounts, but some rough memoranda.  One of these, in his own handwriting, is an entry or memorandum: 'July 14, '90.  Dan. Horgan Dr. to Mary Horgan, $100.'

"In plaintiff's account is one item of $100, amount collected by deceased in January, 1896, on account of plaintiff, from Stephen Doust, on a note of Doust for $300—$100 of the consideration of this note having been loaned by plaintiff to Doust at request of deceased, and the whole of the note afterwards collected by deceased.  On July 14, 1890, date of that entry, deceased took from Doust a note of $300, of that date, secured by a deed of trust, and afterwards, in January, 1896, the whole sum was collected by him.  He made admissions of using money of his aunt's in making up sums to loan out upon mortgages.  Plaintiff also introduced a lot of memoranda, on separate scraps of paper, admitted to have been made by herself at the time, of various small sums of money loaned to him, and corresponding with the small sums named in the account of money loaned.  There was evidence that deceased had on many occasions, and to several parties, admitted that he was owing his aunt a great deal of money. Evidence that she had spoken to him on the matter of paying board, and asked him for his board; that he had stated to several witnesses that his aunt wanted him to pay board, but that he was not going to pay it; and he made the remark that when the old woman died it would all be his anyhow, and such like remarks.  On the other hand a Mrs. Lawrence testified that she had been a neighbor of plaintiff, but had had a

misunderstanding with her.   That claimant had told her that
deceased was to stay there with her, do the general repairs
around, and pay no board.   That plaintiff had admitted hav-
ing $50 belonging to deceased at the time of his death.

"Mrs. Welby, sister of the deceased, testified that some
three or four years before, deceased on one occasion was ill
and complained of his treatment—his aunt's lack of atten-
tion, and said that he was going to leave her, that he had
taken good care of her and the place, and that he would not
have stayed as long as he did had it not been for the promise
to his uncle, and that he didn't owe her anything; and claim-
ant asked him not to go, and said she always treated him
kindly and needed his assistance, and then he said, I don't
owe you anything, and she said, I know you don't.   This wit-
ness on cross-examination stated that in the probate court her
testimony had been that deceased had on one occasion paid
his board to his aunt; that some seven or eight years ago wit-
ness was residing at plaintiff's and deceased paid his board
and paid her board, and witness stated that at that time he
told his aunt:   "Well, the contract was that I was to pay no
board, but you have got nothing; there is no money; your
place don't clear $100 a year, and finally I had to pay you
board to help you live."   That plaintiff and deceased told
witness that deceased had promised his uncle that he would
take care of plaintiff and the places as long as the plaintiff
lived.

"Owen Donahue testified that he heard deceased once
say, when plaintiff was present, that he was her guardian,
that his uncle asked him if he would be her guardian and he
could stay in the house, have his room in the house, he to
keep the houses in repair, look after her rent and not have
any one impose on her, and she said nothing.

"There was evidence that deceased did all the repairs
about his aunt's property, and there was evidence that he
did not.   There was evidence that he did a great deal in the

way of making repairs, and evidence that he did very little; that the places were kept in very poor repair. There was no evidence whatever as to the value of any services rendered by deceased for plaintiff, and no evidence that any services done for her were not paid for. There was testimony that the stable was not worth the rent charged; evidence, that for the purposes of this argument we may concede, tends to show that the deceased did not have the use of the cellar and the room at all the times charged for. But, except the testimony of Mrs. Lawrence, as to the payment or offset of that one item of $50, and except the testimony of Mrs. Welby, above referred to, there was no evidence of any payment, made by deceased to plaintiff, on account of his board or rent. And there was no evidence as to the value of any services rendered by the deceased."

At the request of the plaintiff the court instructed the jury, *inter alia*, as follows, after first modifying the instruction as asked by the plaintiff by inserting the words in brackets and italicised.

"1. The court instructs the jury that, although they may find from the evidence that deceased was a nephew of plaintiff's husband, and that he resided with her; that she was kind and attentive to him, and that their manner of living was such as is usual between members of the same family, and though you may find that there was no express agreement between them as to the amount that he should pay for his board and lodging, or for the use of any room or part of her premises used by him; yet, if you find from the evidence, taking into consideration the circumstances in life of the parties, and all the facts and circumstances shown, that any board and lodging furnished and here charged for, or that any room or part of her premises used by him and here charged for were furnished by plaintiff with the intention at the time on her part to charge therefor and the intention at the time on his part to pay for or be liable therefor, then

as to such items [*as accrued within five years before the 23d day of April, 1896,*] you must find for the plaintiff in such sums as you find from the evidence the board and lodging so furnished and the use of such part of the premises so used by him were reasonably worth."

And at the request of the defendant the court instructed the jury, *inter alia,* as follows:

"A.    The court instructs the jury that all the items or parts of items of plaintiff's account which accrued five years or more before the 23d day of April, 1896, are barred by the statute of limitation, and the plaintiff is not entitled to recover anything for same.

"B.    If the jury believe from the evidence that Daniel Horgan lived at the house and home of plaintiff, and that at the request or solicitation of plaintiff or of her deceased husband, remained there as a member of her family without any intention at the time on his part to pay for the accommodations received by him from her, and without any intention at the time on her part to charge him therefor, then they must find the issues for the defendant as to the items charged for such accommodations.   And this is true even though the jury should believe from the evidence that plaintiff, after the said Daniel Horgan left her home, or after his decease, came to the conclusion to charge said Daniel Horgan for such accommodations.

"C.    The court instructs the jury that if they find from the evidence that the deceased, Daniel Horgan, was the nephew of plaintiff's husband and lived with her, and received his board, lodging and laundry during the time stated in plaintiff's account, and that during all of said time the said deceased lived with plaintiff as a member of her family, and was recognized and treated by plaintiff as a member of her family, then, before the plaintiff can recover anything for such board, lodging and laundry, it devolves upon her to show by a preponderance of the evidence the existence

of an agreement between herself and the said Daniel Horgan, deceased, that said Daniel Horgan would pay her for said board, lodging and laundry; and in such case, unless you believe from the evidence that there was such an agreement between them, you should find for the defendant so far as the claim for board, washing and lodging is concerned.

"D.   Even though the jury may believe from the evidence that the deceased, Daniel Horgan, boarded and lodged with the plaintiff, and had the use of a storage room there, and used the cellar and stable in said premises, and agreed to pay for same, yet if the jury find from the evidence that deceased paid therefor prior to the time he left plaintiff's residence, or at any other time, in services rendered or otherwise, they will find the issues for the defendant as to said items of plaintiff's claim.   And the court further instructs the jury that, in determining whether the deceased made such payment to plaintiff either in services or otherwise, they will take into consideration all the facts and circumstances in the case.   It is not necessary that the defendant should establish by direct and positive testimony that deceased made such payment, and if from all the facts and circumstances in evidence the jury believe that deceased made such payment, then they will find the issues for the defendant as to the items so paid."

There was a verdict for the defendant and the plaintiff appealed.

## I.

The evidence was conflicting and it is conceded by appellant that there is some substantial evidence to support the verdict.   The verdict therefore concludes the questions of fact as it is not denied that the defenses relied on are sufficient if proved to warrant a finding for the defendant.   Only errors of law are therefore relied on by appellant.   The

errors assigned are in the giving of the instructions for the defendant, above set out, and the modification of the instruction asked by the plaintiff. In the view we take of this case it is not necessary to pass upon the correctness of the ruling in modifying the plaintiff's instruction or in giving the first instruction for the defendant, since that ruling only relates to the statute of limitations as to only a part of the plaintiff's claim, and the jury has found against the whole of that claim. If the judgment is right it bars the whole claim and therefore the ruling as to a part thereof being barred by the statute of limitations is immaterial.

The appellant contends that the trial court erred in not instructing the jury that there was an implied promise of the deceased to pay for services, board and lodging rendered and furnished him, for the reason that "kinship, other than the relation of parent and child, does not overcome this presumption."

Two answers to this contention are apparent on the face of the record: first, the plaintiff did not ask the court to so instruct the jury, but on the contrary, by the instruction asked and given, put the case to the jury upon the ground that while it was not necessary that she should show an express agreement, still the jury must find from all the facts and circumstances of the case that when she furnished the board and lodging she intended to charge her nephew for them, and that he intended to pay for them; and, second, the restriction of the presumption to pay to cases between parent and child, was not asserted in the trial court, but on the contrary the plaintiff's instruction limited her right to recover upon her intention to charge and his intention to pay at the time the board and lodging was furnished.

The plaintiff is limited on appeal to the theory on which she tried her case in the lower court, for it would be manifestly unjust to convict that court of error in respect to mat-

ters upon which it never ruled, and upon claims or rights that were never called to its attention. This is axiomatic in appellate practice, and has been the accepted rule, certainly since 1868. [Trig v. Taylor, 27 Mo. 245; Walker v. Owen, 79 Mo. 563; Tomlinson v. Ellison, 104 Mo. 105; Hart v. Leete, 104 Mo. 315; Minton v. Steele, 125 Mo. 181.]

Appellant further insists that after the court had properly given instruction B, for the defendant, it erred in giving instruction C, for the reason that it cast the burden of proof upon the plaintiff, "to show by a preponderance of the evidence the existence of an agreement between herself and the said Daniel Horgan, deceased, that said Daniel Horgan would pay her for said board, lodging and laundry; and in such case, unless you believe from the evidence that there was such an agreement between them, you should find for the defendant so far as the claim for board, washing and lodging is concerned."

The instruction given for the plaintiff told the jury that proof of an express agreement was not necessary but that the plaintiff could recover if she intended to charge and he to pay for the board and lodging, while defendant's instructions required the plaintiff to prove an agreement between plaintiff and the deceased that he would pay for his board and lodging.

The difference between the two instructions is a mere matter of words. If she intended to charge him for board and he intended to pay her for board then their minds met at the same time concerning the same subject-matter, and hence there was an agreement. And of course their respective intentions could only be found by the jury from the facts and circumstances proved. If this be so, then there is no real difference between the two instructions as to the agreement or where the burden of proof rested. The plaintiff did not put her case upon an implied promise to pay and ask the court to instruct the jury that the burden of proof was on the

defendant to overcome the presumption.   On the contrary both parties treated it as a case where the ordinary rules obtain that the burden of proof rests upon him who asserts the claim.   If this was erroneous, it was an error invited by the plaintiff and this court can not relieve her.   [Loomis v. Railroad, 17 Mo. App. 340; Waller v. Railroad, 59 Mo. App. 410; Johnson-Brinkman Co. v. Central Bank, 116 Mo. 558; Sprague v. Sea, 152 Mo. 327.]

If the defendant's instruction was erroneous, by the same measure so was the plaintiff's and a plaintiff can not complain of erroneous instructions asked by him. [Schmitz v. Railroad, 119 Mo. 256.]   Nor is a plaintiff entitled to a reversal on a theory of law in conflict with the instructions which were given at his instance. [Mastin Bank v. Hammerslough, 72 Mo. 274; Clifton v. Sparks, 82 Mo. 115.]

Both parties having tried this case upon the theory that the burden of proof was upon the plaintiff to prove a mutual intention or agreement that the plaintiff should receive pay for the board and lodging furnished by her to the deceased, it is too late now to predicate a right of recovery upon an implied promise which shifted the burden of proof to rebut the presumption upon the defendant.   Therefore the circuit court committed no error in giving instruction C for the defendant.

Instruction D given for defendant is claimed to have been improperly given for the reason that there was no evidence of any payments made by deceased for the use of the cellar and stable and no evidence that he was not to be charged rent therefor, and that in any event the defendant would only be entitled to a credit of the fifty dollars which it appeared the plaintiff had in her possession and which belonged to the deceased.   The theory on which the defendant tried the case in the circuit court was that the deceased did not owe the plaintiff anything either for board, lodging, rent, money borrowed or money collected, and that his agreement

with his uncle, made when he was on his deathbed, was that he was to stay there, protect his widow, look after the property and keep up the repairs, and that the plaintiff knew of this agreement, ratified it after her husband's death and admitted just before the deceased left the house—which was more than a year before he died—that such was the arrangement and that the deceased did not owe her anything on any account whatever, but on the contrary she begged him to return to her house as she had no one to protect her.    This was the testimony of Mrs. Welby, and if the jury believed it they properly found for the defendant, and therefore this instruction could not possibly have prejudiced the plaintiff's case before the jury, and does not constitute reversible error, under section 2303, Revised Statutes, 1889.

The judgment of the circuit is therefore affirmed.  All concur, except *Robinson, J.*, absent.