KANSAS CITY AUTOMOBILE AUCTION COMPANY, APPELLANT, v. GEORGE M. OVERALL, RESPONDENT.—238 S. W. 2d 446.

Kansas City Court of Appeals. Opinion delivered April 2, 1951.

*Robert L. Holder, Rufus Burrus* and *Charles V. Garnett* for appellant.

*Ben W. Swofford, Laurence .R. Smith* and *Swofford, Schroeder & Shankland* for respondent.

DEW, P. J.—Appellant, as the plaintiff in the trial court, filed a petition to recover damages for fraudulent misrepresentations of title to three automobiles, and, at the close of the evidence, was permitted to amend to claim damages for breach of warranty of title. The action was brought by way of attachment. The verdict and judgment on the attachment and on the debt sued on were in favor of the defendant. Plaintiff has appealed.

The gist of the original petition was that plaintiff was engaged in the business of conducting an auction for the sale of used automobiles in Kansas City, Missouri, and so conducted the same for dealers only; that on December 4, 1946, defendant placed a certain described Chevrolet pick-up truck with the plaintiff for sale at auction and warranted the title to same in defendant, clear of all liens or mortgages, whereas,

in fact, said car was subject to a certain mortgage in the amount of $1000, payable to I. Bordman, doing business as the Bordman Investment Company; that defendant knew of said mortgage, failed to reveal the same to plaintiff or to its customer, C. C. Jarvis Motor Company, which purchased the car of the defendant at the auction for $1010 on the above date, which sum was paid to the defendant; that thereafter, in February or March, 1947, the said Bordman Investment Company replevined the car in an action in Brown County, Kansas; that during the pendency of the suit the Jarvis Company called upon plaintiff under plaintiff's "guaranty of title to all automobiles" sold through its auction conducted as aforesaid, and that pursuant to such guaranty plaintiff paid to the Bordman Investment Company $1000 to satisfy the mortgage, taking a release from the Bordman Company of the cause of action and handing same to the Jarvis Company. The petition alleged that defendant willfully, wrongfully and fraudulently failed, neglected and refused to disclose said mortgage and concealed same to plaintiff's damage in the sum of $1000.

In similar allegations the petition charged that on January 22, 1947, defendant offered for sale at plaintiff's auction a 1940 Chevrolet Town Sedan on which there was a mortgage to the Bordman Investment Company for $1000, and which car was sold to G. H. Bones, doing business as the Bones Used Cars; that defendant received the purchaser's draft for said sale, at which time defendant well knew that there was a mortgage on said car for $1000 in favor of Bordman Investment Company, which fact defendant had fraudulently concealed from the plaintiff and the buyer. It was alleged that two months thereafter that car was replevined in Anderson County, Kansas by the Bordman Investment Company, during the pendency of which action G. H. Bones called upon the plaintiff to "stand behind its guaranty" of sound title to the car and, upon learning the facts, the plaintiff paid the Bordman Investment Company $1000, taking a release thereof from said company, and by reason thereof plaintiff has been damaged in the sum of $1000.

It is further alleged that on January 22, 1947, defendant offered and sold at plaintiff's auction a 1946 Dodge truck and warranted the same to be free and clear of encumbrances or liens, and pursuant thereto sold the truck through plaintiff's auction to the Van Patton Motor Company, which paid the defendant therefor; that in fact said truck was subject to a mortgage to the Bordman Investment Company for $1100, which fact defendant willfully and fraudulently concealed from plaintiff and its said customer, and that about two months thereafter the truck was replevined by the Bordman Investment Company in Van Buren County, Iowa, whereupon the purchaser called upon plaintiff for relief under its guaranty of sound title, and plaintiff paid to the Bordman Investment Company $1100, taking a release therefor; that by reason of the willful and fraudulent conceal-

ment of said mortgage by the defendant, the plaintiff had been damaged in the sum of $1100. The petition pleaded that demand had been made of the defendant to pay the damage incurred as alleged, and the same had been refused. Plaintiff prayed judgment in the sum of $3100 and costs.

An affidavit in attachment was thereafter filed on the grounds that defendant was about to remove his property from the state with the intent to hinder and defraud his creditors, was about to remove from the state with intent to change his domicile, and that the damages sought in this case arose out of a commission of a felony or misdemeanor. An attachment bond was furnished by the plaintiff and a writ of garnishment was issued.

The answer pleaded insufficiency of the petition; that defendant was owner of and had a pre-existing mortgage on the vehicles described, and that under the terms of his mortgage he had repossessed the cars before the sale alleged, and that he did transfer good title at the sale, free and clear of any encumbrance. The answer further denied generally the remaining allegations of the petition and pleaded the falsity of the affidavit in attachment, and prayed judgment for dissolution of the attachment and for $1000 damages. Thus the pleading stood until the close of all the evidence, when the amendment to the petition hereinafter more fully considered, was offered and, over the objection of defendant, was allowed.

In substance the evidence of the plaintiff tended to prove that plaintiff conducted a used automobile auction business on commission, selling only to dealers at wholesale. Defendant was a dealer in used automobiles at retail and wholesale. Plaintiff had sold many cars for the defendant previous to the instant transaction. On the dates alleged, the cars had been offered for sale through the plaintiff's auction, and defendant furnished each purchaser with a certificate of title in his name and duly assigned to the purchaser and which contained a warranty that the defendant's title was good and not subject to liens or mortgages. According to the custom of the plaintiff, each sale was covered by an invoice, containing the terms of the auction services, a part of which read: ''Consignor further agrees that the Kansas City Automobile Auction Co. is acting only as its or his salesman in the sale of said automobile, and the said Automobile Auction Co. shall have no liability to consignor for the carrying out of any agreement or bid by a dealer, purchaser, or for any mortgages or liens or otherwise, if any there be on said automobile, and it only agrees to deliver the purchase price of said automobile to consignor and said automobile to dealer's purchaser in the manner above stated''.

At the bottom of each invoice appeared the printed words: ''Purchaser has inspected the above described vehicle and accepts it as it is''. In each instance the purchaser signed his name under the last above quoted words. The president of the plaintiff company testified this method was used so that it was not required ''in that fashion to

guarantee and you didn't guarantee to the buyers the titles to the automobiles'', except ''as a moral obligation'' to protect purchasers, as a business policy.

Plaintiff's further evidence was that upon learning of the Bordman mortgages on the three cars and of the litigation involving them, plaintiff inquired of the defendant regarding the matter and defendant claimed to have repossessed the cars under a prior mortgage he himself had taken on the cars, after which he had new certificates issued to himself, which he had assigned and delivered to the purchasers at the auction sale. He said he had obtained the cars under a mortgage which he had predated and filed.

The three cars in question had formerly been owned by Victor R. Stewart, who operated an electrical appliance store in Independence. He had obtained many loans from the Bordman Investment Company on chattel security. The 1942 Chevrolet truck and the 1940 Chevrolet sedan were used cars and the 1946 Dodge truck was a new car purchased from the Latimer Motor Company and on the same day a mortgage on that car was given to the Bordman Investment Company. Stewart made a chattel mortgage to Bordman on the cars as follows: On the Chevrolet truck for $1000, dated November 5, 1945, filed November 9, 1945, certificate later issued to Stewart November 28, 1945, on which was shown the mortgage above described, and a mortgage dated September 12, 1946, and filed September 24, 1946. A mortgage was given on the 1940 Chevrolet sedan for $1000, dated January 23, 1946, filed for record January 25, 1946, and the certificate of title to Stewart was dated July 11, 1944, showing on its face a lien of $621.75 in favor of the Automobile Acceptance Corporation, dated June 12, 1944, and also the filing of a mortgage to the Bordman Investment Company on February 25, 1946, dated January 23, 1946; also the filing of a chattel mortgage to Bordman Investment Company for $5125, dated Septembed 12, 1946, filed September 24, 1946. The mortgage to Bordman Investment Company on the 1946 Dodge truck was dated August 12, 1946, for $1100, filed August 15, 1946. This car being a new car, there was no certificate of title at that time, but it was later issued to Stewart on September 30, 1946, and bears stamp of the filing of the mortgage to Bordman Investment Company in the sum of $1100, dated August 12, 1946, filed August 15, 1946. The printed form used in each of the Bordman mortgages contains a statement that it was for ''part of the purchase price''.

In addition to the above mortgages there were introduced in evidence by the defendant two additional mortgages from Stewart to the Bordman Investment Company, one dated September 12, 1946, filed September 24, 1946, for $5125, covering both Chevrolet vehicles, and another mortgage for $38,009.94, being a blanket mortgage on all the equipment owned by Stewart dated September 28, 1946, and filed on October 1, 1946, which included the two Chevrolet cars mentioned.

About the middle of October, 1946, Bordman Investment Company seized Stewart's store, his equipment and appliances, although it did not take possession of any one of the three cars mentioned, but in fact the two trucks in question were used for the transportation of the goods seized, with the assistance of Stewart himself, and Stewart retained thereafter possession of the three automobiles. Later in involuntary bankruptcy proceedings against Stewart, the Bordman Investment Company was required to make certain refunds to the bankrupt estate.

There was evidence that plaintiff acquired each of the three Bordman mortgages first described on the cars in question as alleged in the petition and caused a termination of the pending litigation under each. There is no evidence, however, that there was a judgment in any of such actions, nor that any assignments were obtained by the plaintiff from any of the vendees affected.

On the part of the defendant, evidence was offered that in the middle of September, 1946, Victor R. Stewart requested of the defendant a loan to enable him to buy certain merchandise for his business. They had long been acquainted. After considering the request until the next day, defendant agreed to make a loan to Stewart, providing the same could be secured. Stewart offered to secure the loans by the three cars here involved, all of which he told defendant were clear. He showed defendant certificates of title to the two Chevrolets and a bill of sale recently received for the Dodge truck. Defendant examined the title papers and checked the motor numbers and noted that the certificates showed title in Stewart with no liens or mortgages, and the bill of sale on the Dodge from the Latimer Motor Company to Stewart showed "Paid", and showed no liens. Stewart said he would need the money for a period of only one week, when the merchandise would be resold at a profit, and asked for $4500 for that length of time. Defendant then gave Stewart $4500 in cashier's checks to secure which Stewart then gave defendant a check for that amount, which check was postdated to September 26, 1946, later presented by the defendant and returned for insufficient funds. The next day following receipt of the loan of $4500, Stewart returned and said that he needed $500 more to make the deal and asked that the loan be increased to $5000 and after some discussion, defendant loaned Stewart an additional $500, which additional amount was later paid in cash to the defendant by Stewart, leaving the remaining $4500 unpaid. To secure the note of $5000 so made to defendant, Victor R. Stewart gave to the defendant a chattel mortgage on the three automobiles and certain merchandise, said mortgage being dated September 19, 1946, and the note being due within one week from date. The mortgage warranted the titles to the cars as clear of encumbrances. It is shown as filed October 17, 1946. Stewart testified he immediately used $4000 of the money borrowed from defendant to pay Bordman on his loan accounts.

Defendant testified that after discovering that Stewart had not purchased merchandise with the money loaned, he inquired of Stewart about the payment of the mortgage debt and Stewart asked for a few additional days, which were granted him. In the meantime, Stewart's checks had failed to clear. Later the defendant had the sheriff take possession of the three cars, which were brought to the defendant's lot and remained there during repairs, and until new certificates of title were issued to defendant, and the cars were then sold through the plaintiff's auction, the new certificates being assigned by defendant to the respective purchasers.

Stewart further testified that he did not tell defendant of any of the Bordman mortgages. He said he had given Bordman a "lot" of mortgages, "every time I went down there I would usually sign up a bunch of mortgages for money I would get from him"; that "usually I went down there every week and took a large sum of money to him"; that he told Izzy Bordman of the Overall loan when Bordman took the $38,000 blanket mortgage, including the Chevrolet cars; that "as much money as I paid them, I didn't figure I owed money on the trucks"; that after he obtained the loan from defendant, Bordman found it out and demanded a payment and pressed him so hard he gave Bordman $4000 of the money just borrowed from defendant; that, however, he had retained the title papers to the cars until they disappeared when the Bordman "raid" was made under the $38,000 mortgage. He said he didn't consider he had any mortgages on the three cars at the time of the loan from defendant that weren't filed. As to the new Dodge truck, he was asked: "Q. When you bought the truck in order to pay for it you borrowed the money from Bordman, didn't you? A. I borrowed money several times from Mr. Bordman, but I paid Latimer Motors with my check. Q. Didn't Mr. Bordman give you the check that was used, payable to you and the Latimer Motor Company? A. I don't think he did, no; no, he didn't. I paid him with my own check. I am sure". The Bordman check referred to was not offered in evidence.

At the close of all the evidence and over objections, the plaintiff was permitted to amend his petition to the effect that plaintiff purchased the Bordman notes and mortgages and paid therefor $3100, causing the possessory actions brought or threatened by Bordman to be dismissed as to the vendees of the cars and thereby became vested by subrogation to all the rights of the vendees against defendant for having warranted the titles; that the purpose of such purchase was to protect the vendees at plaintiff's auction and to discharge a moral obligation and preserve the good will and respect of the plaintiff and other customers. Plaintiff, by its main Instruction 1, submitted only the theory of its amendment above described, namely breach of warranty and did not submit its original theory of fraudulent misrepresentation of titles. In this connection plaintiff's first point is that defendant's main Instruction A is in irreconcilable conflict with plain-

tiff's Instruction 1; that it deals with an issue abandoned by plaintiff, to-wit, fraud; that it ignores the main issue submitted, breach of warranty of title; that it erroneously permitted a finding that the certificates or bills of sale showed no liens; ignored plaintiff's evidence that the Bordman mortgages were purchase money mortgages, and incorrectly stated the law respecting notice of automobile liens.

In considering the points made, let us look first to the plaintiff's own main Instruction 1. Plaintiff therein submitted the dates of the filing of the Bordman mortgages, the filing on October 17, 1946, of the defendant's mortgage, the issue of certificates of title to the defendant thereafter, the sale by him of the cars on December 4, 1946 and January 22, 1947, at plaintiff's auction, the assignment by him of the above certificates issued in his name to the buyers, and the warrant of title thereby; the purchase of the Bordman notes and mortgages by the plaintiff and its action in causing possessory proceedings brought or threatened by Bordman to be discontinued, and that such action of plaintiff was in discharge of a moral obligation to protect its reputation and the good will of its customers, and directing a verdict for plaintiff in the event of an affirmative finding of the facts so hypothesized.

Defendant's Instruction A directed a verdict for defendant if the jury found that a loan on the cars was made and paid to Stewart by defendant on or about September 19, 1946, for $5000; that Stewart, about the same date, executed a note to defendant for that amount, dated September 19, 1946, due within one week thereafter, and on or about the same date executed and delivered to defendant a chattel mortgage on said cars to secure that note; that at that time Stewart exhibited to defendant certificate of title or bills of sale to said cars which showed no liens on the face thereof, and represented to the defendant that the cars were free and clear of encumbrances, and that at that time defendant had no knowledge of any prior lien on the titles to the said cars and acted in good faith; that Stewart defaulted on the payment of said note and mortgage; that the plaintiff, on October 26, 1946, caused them to be seized; that thereafter, on November 6, 1946, plaintiff caused new certificates of title to be issued to him by reason of such mortgage repossession, and thereafter sold the cars through the facilities of plaintiff's auction under the conditions and terms in evidence, and in good faith and without knowledge of any claim of pre-existing liens thereon.

It will be noted that plaintiff in its own main instruction based its right to recover, as far as notice is concerned, on the mere prior filing of the chattel mortgages. This, with certain exceptions, is not sufficient in respect to mortgages on motor vehicles. Section 3488, R. S. Mo., 1939, as amended (Laws of Mo., 1941, p. 328), makes it the duty of the Recorder of Deeds, upon request of the mortgagee or assignee, to certify a chattel mortgage of a motor car, the date of the filing of the mortgage, its date and amount, and the name of the payee.

It further provides that: "A mortgage on a motor vehicle shall not be notice to the whole world, unless the record thereof is noted on the certificate of title to the mortgaged motor vehicle, as herein provided: Provided, however, that the provisions of this section shall not apply to chattel mortgages given to secure the purchase price or any part thereof * * *".

It appears from the evidence that each of the three title certificates issued to Stewart now show stamped thereon the Bordman mortgages dated and filed prior to September 19, 1946, the date of the defendant's mortgage. However, the difficulty is to determine on what date, in fact, the stamped endorsements thereon were made, since on that date, and not until that date, notice of the mortgages referred to became effective "to the whole world". The stamped endorsements on the certificates of title do not show the date such endorsements were made. There was substantial evidence that they were not affixed on the date of the mortgages. Plaintiff contends further that under the section quoted, no further notice was required of the Bordman mortgages because they were all "purchase price" mortgages. The printed form used in each of the three Bordman mortgages so stated.

As to the Dodge truck, Stewart's title certificate was dated September 30, 1946, and the date of the Bordman mortgages shown thereon was August 12, 1946, filed August 15, 1946. As to the Chevrolet truck, the date of Stewart's certificate of title was November 28, 1945, whereas one Bordman mortgage is endorsed thereon as dated November 5, 1945, filed November 9, 1945, for $1000, and a mortgage dated September 12, 1946, for $5125, filed September 24, 1946. As to the Chevrolet Sedan, Stewart's certificate of title is dated July 11, 1944, and one Bordman mortgage is noted thereon dated January 23, 1946, for $1000, filed February 25, 1946, and a mortgage dated September 12, 1946, for $5125, filed September 24, 1946.

The first question is, when, in fact, were the stamped endorsements made on the three Bordman certificates of title held by Bordman? Plaintiff has no greater rights thereunder than previously enjoyed by the Bordman Company. The evidence showed that it was the practice of the recorder to endorse the filing of a mortgage on the certificate of title at any time requested, regardless of the date of the filing of the mortgage. Both Stewart and the defendant testified that on September 19, 1946, when Stewart's mortgage to him was accepted, Stewart's title certificates to the two Chevrolet cars and his bill of sale to the Dodge truck were presented to the defendant and they showed no liens whatsoever. Plaintiff had not yet received a certificate of title to the Dodge, and the bill of sale from the Latimer Motor Company to Stewart was marked "Paid", and was dated August 12, 1946. The endorsed stamp of the recorder on the certificate of the title later issued to that car, showing the Bordman mortgage for $1100, dated August 12, 1946, and filed August 15, 1946, could not have been on that certificate at the time of the mortgage from Stewart to defendant,

for the reason that the certificate was not issued until September 30, 1946. Likewise, the title certificate to the 1942 Chevrolet truck was not issued until November 28, 1945, but there is a stamped endorsement thereon of one Bordman mortgage dated November 5, 1945 for $1000, filed November 9, 1945, and one dated September 12, 1946, for $5125, filed September 24, 1946, thus leaving the question of the date when such endorsements were made unascertainable. Stewart's title to the 1940 Chevrolet sedan is dated July 11, 1944; endorsements appear thereon of one Bordman mortgage dated January 23, 1946, for $1000, filed February 25, 1946, and one dated September 12, 1946, for $5125, filed September 24, 1946. The endorsements of the Bordman mortgage now claimed on the two Chevrolet vehicles show the signature of the Deputy Recorder "L. Wilson". The Special Deputy in the Recorder's office at Independence testified that L. Wilson did not handle chattel mortgages in the Recorder's office until after February 15, 1947, thus indicating that the endorsements on the last mentioned certificates were made after that date. Stewart testified that after he made the loan from the defendant, he (Stewart) retained the title papers in his possession, but after his place was "raided" by Bordman in the middle of October, 1946, he could no longer locate the title papers. He said as long as the title papers were in his possession, no mortgages were stamped thereon. He said it might have been the middle of October, 1946, when he showed to defendant his title certificate to the Dodge truck. Thus the date of the endorsements of the Bordman mortgages on the certificates of title and, therefore, the effective date of the notice thereby created, was a disputed fact.

Was Bordman exempted by the statute from the provision requiring endorsement of mortgages on motor cars on certificates of title? Plaintiff so claims because the mortgages recited they were for part of the purchase price, and plaintiff assumes that exemption in his Instruction 1. None of the mortgages was made to the seller of the car. It is true that the printed form of each mortgage recited that it was for part of the purchase price. But there was substantial evidence to contradict that fact and the issue was one for the jury. The same two Chevrolet cars were included in the later additional mortgage from Stewart to Bordman for $5125, dated September 12, 1946, in which the same purchase price recital appears. There was no proof otherwise that the proceeds of the Bordman mortgages on the two Chevrolet cars were used for their purchase, nor that the mortgages were part of the same transaction, nor contemporaneous with such purchase. 59 C. J. S. p. 301, Sec. 231(b). As to the Dodge truck, Stewart testified that he paid the Latimer Motor Company with his own check for the purchase of that car and did not receive a check from Bordman payable jointly to him and to the seller, as claimed. The plaintiff did not produce any such Bordman check. The amount of the mortgage and the purchase price were not the same. Considering this evidence, together with the numerous loans from Bordman to Stewart

on various kinds of personal property, the jury could reasonably have concluded that the Bordman mortgage on the Dodge truck likewise was not made for the purchase price thereof.

The general rule stated in Section 3488, is that the filing of the mortgage on a motor car is not notice "to the world" until such fact is noted on the title certificate, unless the mortgage is for part of the purchase price. Absent such endorsement of a mortgage not for part of the purchase price, a person acquiring such car without actual notice of the existing mortgage, would have no knowledge of it at all. If the Bordman mortgages, through which plaintiff claims, came within the exception provided in the statute, it was plaintiff's burden to establish that fact by proof. Hunter v. American Express Co., 4 S. W. 2d 847, wherein it is said at page 850: "The party seeking to avail himself of any exception to a general rule carries the burden of establishing the facts necessary to be proved in order to invoke the provisions of the exception". As a consequence of the plaintiff's burden of proof it was the plaintiff's first duty to request instructions to cover the essential elements. As said in Moloney v. Boatmen's Bank, 288 Mo. 435, 232 S. W. 133, 140: "If the instructions did not go far enough in plaintiff's favor, he should have asked for others presenting the theories of the law contended for by him". See, also, Hooper v. Met. St. Ry. Co., 125 Mo. App. 329, 102 S.W. 58, 59; Horgan v. Brady, 155 Mo. 659, 56 S.W. 294; Christian v. Conn. Mutual Life Ins. Co., 143 Mo. 460, 45 S.W. 268. "It is settled, in the following cases, that one party cannot be allowed to complain of another's instructions where his own announced the same doctrine, although it be erroneous. (Citations)". Reilly v. Ry. Co. 94 Mo. 600, 611. The issue of the necessity of endorsements on the title certificates and the "purchase price" element were essential in plaintiff's Instruction 1, and wholly omitted therein, and if omitted in defendant's Instruction A, plaintiff is in no position to complain, having requested no further instructions on that issue. There was ample evidence to the effect that the Bordman loans were not made for part of the purchase price, and that none was shown endorsed on the certificates of title at the time Stewart executed his mortgage to the defendant.

The issues of the constructive notice and actual notice to defendant of the mortgages respectively claimed by the plaintiff and defendant, submitted in defendant's Instruction A, were therefore proper and not in conflict with plaintiff's Instruction 1. The other issues submitted in Instruction A were proper. It is claimed that the further element of good faith on the part of the defendant, submitted in Instruction A, was erroneous as being immaterial to the statutory requirements of notice. This further finding required of the jury by defendant's Instruction A, in order to render a verdict in his favor, after the finding of the preceding issues required by the instruction, was not erroneous, but placed an additional burden on the defendant's part

292

of which the plaintiff cannot complain. Instruction A hypothesized a complete defense to the plaintiff's theory of recovery under the evidence produced and did not erroneously omit or include matters vital to the plaintiff's case of which the plaintiff is in a position to complain.

Plaintiff makes the further general point that the verdict is contrary to the law and not supported by the evidence, and the trial court erred in refusing to set it aside. Plaintiff incurred no liability to the vendees of the cars purchased at plaintiff's auction; the fact of agency was specifically agreed to in the invoices in evidence, the identity of the parties and their relationship were plainly shown therein; the same invoices were brought to the attention of each vendee, who signed the acceptance of the car described thereon and paid the purchase price to the defendant. There was no undisclosed agency and the vendeees could look only to the defendant for breach of warranty. The "moral obligation" assumed by the plaintiff had no effect on its legal liability to the parties. Its sole interest now is that arising under the Bordman mortgages purchased and its rights are confined to those of the Bordman Investment Company, which assigned the mortgages to the plaintiff. We believe the verdict was supported by the law and by substantial evidence. Judgment affirmed. All concur.